[No. 6121. Decided October 13, 1906.]

A. J. ALBRING et al., Appellants, v. EMANUEL PETRONIO, Respondent.[1]

MUNICIPAL CORPORATIONS—SPECIAL ASSESSMENTS—FORECLOSURE— STATUTES—CONSTRUCTION. Statutory provisions for the foreclosure of local improvement assessments are to be strictly construed, and an exact compliance with every requirement enforced.

SAME — SALE — NOTICE TO OWNER — PAYMENT OF TAXES DURING PERIOD OF REDEMPTION. Bal. Code, § 814, securing to the holder of a certificate of sale of land for a local improvement assessment a lien for the amount paid and for taxes levied previously or subsequently, requires such holder to pay subsequent taxes during the period of redemption as an additional means of notice to the owners of the land.

SAME—NOTICE OF APPLICATION FOR DEED—DILIGENCE IN ASCERTAINING ADDRESS OF OWNER. Bal. Code, § 815, requiring the holder of such a certificate to give notice, by personal service or by publication, to the owners of the land that demand for a deed will be made, contemplates personal service if possible, and diligent search for the owner; and a holder who fails to pay subsequent taxes, or make inquiry at the office of the county treasurer for the address of the owner who had paid such taxes, does not exercise the diligence required of him by the statute before a deed can be issued.

Appeal from a judgment of the superior court for King county, Yakey, J., entered December 22, 1905, in favor of the defendant, after a trial on the merits before the court without a jury, dismissing an action to set aside a special assessment foreclosure and to quiet title. Reversed.

[1]Reported in 87 Pac. 49.

*Harrison B. Martin* and *Byers & Byers*, for appellants.
The appellants being residents of this state, were entitled to
personal notice. *Bardwell v. Collins*, 44 Minn. 97, 46 N. W.
315, 20 Am. St. 547, 9 L. R. A. 152; *Hammett v. Phila-
delphia*, 65 Pa. St. 146, 3 Am. Rep. 615; *Washington Ave-
nue*, 69 Pa. St. 352, 8 Am. Rep. 255; *In re Smith's Petition*,
9 Wash. 85, 37 Pac. 311, 494. Enforcing a special assess-
ment without notice to the owners is a taking of property
without due process of law. *Scott v. Toledo*, 36 Fed. 385;
*Davidson v. New Orleans*, 96 U. S. 97, 24 L. Ed. 616; *Hagar
v. Reclamation District No. 108*, 111 U. S. 701, 4 Sup. Ct.
663, 28 L. Ed. 569; *Lent v. Tillson*, 140 U. S. 316, 11
Sup. Ct. 825, 35 L. Ed. 419.

*William Hickman Moore* and *G. Edgar Hayes* (*Dallas V.
Halverstadt*, of counsel), for respondent, contended, among
other things, that the title of the act was sufficient. *Laidlaw
v. Portland etc. R. Co.*, 41 Wash. 292, 84 Pac. 855; *Seattle
etc. Waterway Co. v. Seattle Dock Co.*, 35 Wash. 503, 77
Pac. 845; *Seattle v. Barto*, 31 Wash. 141, 71 Pac. 735;
*Lancey v. King County*, 15 Wash. 9, 45 Pac. 645, 34 L. R. A.
817. The failure to make findings was not error when the
same were not requested. *Slayton v. Felt*, 40 Wash. 1, 82
Pac. 173; *White Crest Canning Co. v. Sims*, 30 Wash. 374,
70 Pac. 1003; *Knowles v. Rogers*, 27 Wash. 211, 67 Pac.
572; *Wintermute v. Carner*, 8 Wash. 585, 36 Pac. 490. The
legislature may provide for notice by publication in such
cases. *King v. Portland*, 184 U. S. 61, 22 Sup. Ct. 290, 46
L. Ed. 431; *Wight v. Davidson*, 181 U. S. 371, 21 Sup. Ct.
616, 45 L. Ed. 900; *Fallbrook Irr. District v. Bradley*, 164
U. S. 112, 17 Sup. Ct. 56, 41 L. Ed. 369; *City of St. Joseph
v. Truckenmiller*, 183 Mo. 9, 81 S. W. 1116; *Meier v. St.
Louis*, 180 Mo. 391, 79 S. W. 955; *State v. Chicago etc. R.
Co.*, 80 Iowa 586, 46 N. W. 741; *State v. Chicago etc. R.
Co.*, 68 Iowa 135, 26 N. W. 37; *Wilson v. Hathaway*, 42
Iowa 173; *Eyssell v. St. Louis*, 168 Mo. 607, 68 S. W. 893;

*Kansas City v. Ward*, 135 Mo. 172, 35 S. W. 600; *Kansas City v. Duncan*, 135 Mo. 571, 37 S. W. 513; *State v. Buchanan*, 29 Wash. 602, 70 Pac. 52; *Holden v. Hardy*, 169 U. S. 366, 18 Sup. Ct. 383, 42 L. Ed. 780; *New Whatcom v. Bellingham Bay Imp. Co.*, 16 Wash. 131, 47 Pac. 236.

CROW, J.—On December 19, 1890, the plaintiffs A. J. Albring and Alice F. Albring, husband and wife, purchased in the name of said A. J. Albring, as their community property, lots 3 and 4 in block 2 of Prospect Terrace Second Addition to the city of Seattle, and having promptly recorded their deed, have ever since owned the same, unless their title has been divested by the proceedings hereinafter mentioned. On October 30, 1899, in pursuance of the provisions of the eminent domain act of 1893, Bal. Code, § 775 *et seq.* (P. C. § 5050), the council of the city of Seattle passed Ordinance No. 5624, entitled: ·

"An ordinance laying out and establishing a public street in the city of Seattle, commencing on the south margin of Yakima avenue and running thence southeasterly across block two (2) of Baxter's Addition to the city of Seattle and across lot one (1) of block three (3) of said addition to an intersection with the west margin of Thirtieth avenue south at a point sixty (60) feet south of the south margin of Norman street, and providing for the taking and damaging of the land and other property necessary therefor, and for the ascertainment and payment of the just compensation to be made for the private property to be taken or damaged for said purpose, and for an assessment upon the property benefited for the purpose of making such compensation."

After the passage and approval of the ordinance, the city filed in the superior court of King county its petition, praying that just compensation be made for the lands and property to be taken and damaged. Afterwards it filed a supplemental petition for the appointment of commissioners to make a special assessment on the lands to be specially benefited by said improvement. An assessment district was cre-

ated, which included said lots 3 and 4, and an assessment of $12 was levied against each of them. Afterwards said assessment was certified to the treasurer of said city, who, on the 27th day of March, 1901, sold said lots for the purpose of collecting said assessments which had become delinquent. Said sale was made to one Carrie B. Osborne, who paid $30 for lot 3 and $27 for lot 4, and said treasurer issued to her two certificates of purchase which were recorded in the office of the auditor of King county, Washington. Afterwards said Carrie B. Osborne assigned said certificates to the defendant Emanuel Petronio. On the 23d day of October, 1903, the period of redemption having expired, and said Emanuel Petronio having published notice to the plaintiff A. J. Albring, said city treasurer executed to him two separate deeds for said lots, which he caused to be recorded on October 31, 1903.

It appears from undisputed evidence that the plaintiffs, A. J. Albring and wife, at all times from the date of their purchase of said real estate in 1890, until the commencement of this action, resided in the city of Spokane; that their place of residence was unknown to the commissioners who made said assessment, to the officials of the city of Seattle, or to said Emanuel Petronio, or to any of them; but was known at the office of the treasurer of King county: that said plaintiffs at no time prior to the execution and recording of said deeds to Emanuel Petronio had any actual notice or knowledge or means of obtaining knowledge, that said ordinance had been passed, that said improvement had been made, that said assessment had been levied, that the same had become delinquent, that said sale had been made, or that said deeds had been executed and delivered to the defendant Emanuel Petronio. In fact, they were at all of said times entirely ignorant of the pendency and progress of any of said proceedings. It appears that said lots, although within the assessment district, were located at a point

of from one-fourth to one-half a mile distant from said improvement; that had the plaintiffs gone upon their property and inspected the same, they would not have observed any improvements being made, nor would they have come into the possession of facts tending to put them upon inquiry; that said lots were at all of said times vacant and unimproved; and that they were of the reasonable total value of $1,000. During the entire two-year period of redemption granted by Bal. Code, § 8.15 (P. C. § 5089), and at all times prior to the execution and delivery of said deeds, the said plaintiffs promptly paid all general taxes levied against said lots, remitting the same to the treasurer of King county, ` Washington. Their first knowledge of said assessment proceedings or of the execution and delivery of said deeds was obtained in the year 1904, when they tendered payment of the state and county taxes for the year 1903, and were informed by the county treasurer that payment had been made by the defendant Petronio, who claimed to own the property. Thereupon the plaintiffs made an investigation, and for the first time learned the facts. They immediately tendered to the said Emanuel Petronio the full amount of said assessments with all penalties, interest and costs, and all subsequent assessments and taxes paid by him, which tender being refused this action was instituted to set aside said certificates of purchase and tax deeds, to declare the same void, to quiet their title to said property, and to permit the plaintiffs to redeem. The plaintiffs have pleaded all of the facts above set forth, and the defendant in his answer has also pleaded as the source of his alleged title the various proceedings culminating in said assessment, sale and deeds. There is no substantial dispute as to the facts involved in this case. The trial court, after refusing findings requested by the plaintiffs, without making any findings whatever, entered a decree dismissing their complaint. From said final judgment this appeal has been taken.

The appellants have made numerous assignments of error, contending in substance (1) that the statute under which said proceedings and pretended sale have been conducted is unconstitutional; (2) that their property has been taken without due process of law; (3) that they were entitled to judgment upon the pleadings for which their motion was denied; and (4) that if said eminent domain act is held to be constitutional, it must be strictly construed as against the respondent who claims title under the proceedings therein authorized.

It is always the duty of the courts to sustain the constitutionality of legislative enactments if they can possibly do so. By reason of the view which we take of said act in so far as it affects this action, it will not be necessary to question its constitutionality in any particular. The record before us shows that all notices to the appellants during the entire course of these proceedings were given by publication, their address being unknown to any of the city officials or the respondent. The purpose of such publications was to advise the parties interested of the nature and pendency of the various proceedings, so that if possible they might have actual notice of the same. It is conceded that such a result was not accomplished in this case. The appellants now contend that said eminent domain act, if constitutional, should be strictly construed, as it strongly derogates from usually accepted ideas of property rights. We think this contention should be sustained. The respondent's only claim of title is under these proceedings. He has purchased property of the value of $1,000 for the small sum of $57, with such additional expenses and taxes as he may have since disbursed, which are merely nominal. If he is to obtain and retain the legal title, he should be permitted to do so only upon an exact compliance with every requirement of the statute strictly construed as against him.

Bal. Code, § 810 (P. C. § 5084), provides that, when the sale is first made by the treasurer, he shall issue to the pur-

chaser a certificate which must be recorded in the office of
the county auditor within three months from the date thereof.
Bal. Code, § 814 (P. C. § 5088), secures to the purchaser
holding such certificate a lien on the lot or parcel of land
sold for the amount paid by him, as well as for all taxes
and special assessments and all interest, penalties, cost and
charges thereon, whether levied previously or subsequently
to such sale, and whether for state, county, city, or town
purposes, subsequently paid by him, and that he shall be
entitled to interest at the rate of twenty per cent per annum
on the original amount paid, and such subsequent payments,
from the date of the respective payments. This provision
undoubtedly contemplates that the certificate shall not convey
a title, but shall only secure to the purchaser during the
period of redemption a lien for the sums mentioned. It
also contemplates that the holder of said certificate shall,
during the period of redemption which is guaranteed by
§ 815, pay all taxes and public charges against said prop-
erty whether the same be for state, county, city or town
purposes. Neither the respondent nor his assignor ever made
any payments of general taxes during said period. The
record does not show that they ever tendered any such pay-
ments, nor does it explain why such payments were not made
by them. We think one purpose of this provision for the
payment of such taxes by the holder of the certificate, is
to furnish an additional means of actual notice to the owners
of the property that the assessment has been levied, that the
preliminary sale has been made, and that the certificate has
been issued, so that they may obtain such actual knowledge
in ample time to redeem. In this instance the appellants were
deprived of this opportunity, the respondent and his as-
signor having failed to make such payments. Section 815,
after providing for a period of redemption of two years,
also provides that said redemption may be made by the owner
upon payment of the amount for which the lots were sold,
with interest at the rate of twenty per cent per annum, to-

gether with all taxes, special assessments and interest, penalties and charges thereon paid by the purchaser with like interest thereon. Said section further provides, that unless written notice of taxes and assessments subsequently paid, and the amount thereof, shall be lodged with the treasurer, redemption may be made without including the same. This provision not only contemplates that the holder of the certificate of purchase shall pay these general taxes and other charges, but also that he shall, for the protection of his lien, file written notice of such payment with the city treasurer.

Said § 815 further provides that, before a deed shall be made, the holder of the certificate of sale shall have notified the owners of said lots or parcels of land that he holds said certificate, and that he will demand a deed therefor; that said notice shall be given by personal service, or by publication in a weekly newspaper published in said city once each week for three successive weeks. Our construction of this statute is that it contemplates a personal service if it can possibly be made. This being true, the holder of the certificate should make an honest and diligent search for the owner. If the owner cannot thus be found, then service by publication may be made. In this instance the respondent is not shown to have had any actual knowledge of the postoffice address or residence of the appellants, nor is he shown to have made any such search; but the record shows that said appellants had, during the entire period of redemption, been paying the general taxes upon this property, and that the county treasurer had their postoffice address. The respondent himself failed to make such payment of taxes. If he was acting in good faith, he could only have done so by reason of the fact that the payments were first made with such promptness by the appellants as to prevent payment by him. But if this was the case, the address of the appellants would certainly have been obtainable at the office of

the county treasurer, and could have been readily learned by the respondent. If he failed to call at said office and tender payment of the state and county taxes as was his duty, he thereby intentionally or unintentionally deprived himself of an opportunity for learning the address of the appellants, which would have enabled him to serve them with personal notice. This was an act of omission upon his part for which the appellants are in no way responsible, but which resulted in preserving their profound and excusable ignorance of any of the proceedings. Said § 815 further provides that the treasurer's deed shall be executed only after payment of all subsequent taxes and special assessments on said lots. This provision evidently contemplates that, as a condition precedent to the obtaining of said deeds, a showing must be made to the city treasurer that all taxes and special assessments which have become due either prior or subsequent to the original sale have been paid. This being true, the respondent necessarily was obliged to ascertain whether said taxes and assessments had been paid. Had he done this, he would have learned before the execution of the deed that their payment had been made by the appellants, and necessarily would have also learned the appellants' address.

Our view is that this statute must be strictly construed as against the respondent; that he must be held to a complete and exact compliance with all of its provisions as a condition precedent to obtaining his deeds. Had he succeeded in giving personal notice to the appellants, a less stringent rule might be invoked in his behalf. He failed to pay said taxes, to attempt their payment, or to explain their nonpayment by him. He permitted their payment to be made by the appellants during the period of redemption. He failed to avail himself of an opportunity which he had during the period of redemption for obtaining knowledge of the appellants' postoffice address and place of residence, and has thereby placed himself in a position which he may think will

excuse his having given them notice by publication instead of personal service. This is an action in equity and, under these circumstances, we think appellants are in equity and good conscience entitled to redeem said property. Were we to hold that the appellants are without remedy, we would be placing a construction upon said statute which would enable unscrupulous persons to avail themselves of its provisions as a means of fraud and oppression against innocent owners of property. This we should not do. Our duty is to so construe it that it may be available as a reasonable and proper measure for the collection of delinquent assessments as contemplated by the legislature. While there is nothing in the record affirmatively showing any intentional fraud on the part of the respondent, yet if a purchaser at a sale of this character can be permitted to hold his certificate for two years during the entire period of redemption, without the payment of taxes, without any showing why such payment was not made, without the suggestion of an effort to learn the place of residence of the true owner, and can then obtain a deed depriving the ignorant and innocent owner of his title, then the statute would become a most vicious instrument for the perpetration of fraud. Considering the entire statute, we are constrained to believe that the legislature in drafting it made these various provisions to which we have referred in order that every opportunity might be afforded an owner to obtain actual notice of the assessment and sale before the period of redemption had expired. The long period of redemption which it guarantees, the provision for the payment of the taxes by the holder of the certificate, the requirement that notice be given, the requirement that written notice of all taxes paid by the purchaser must be filed with the city treasurer, and the further requirement that all taxes must be paid before a deed can be obtained, show a legislative intent to require such steps to be taken as would ordinarily result in bringing actual notice home to the owners of the property.

There has been a complete failure upon the part of the respondent to comply with these provisions. Our holding is that, when a certificate of purchase is obtained, it is the duty of its holder to pay all general taxes and all public charges against said property. If any reason exists why he cannot do so, some affirmative showing should be made to explain his omission. The appellants have at all times since learning of said assessment been ready and willing, and are now ready and willing, to pay said assessment, together with costs, taxes and charges, with twenty per cent interest. In fact, they have tendered payment and have kept their tenders good. We think they are in equity entitled to redeem.

It is ordered that the judgment of the superior court be reversed, and that this cause be remanded with instructions to the trial court to permit the appellants to redeem, and in doing so to ascertain the amounts due the respondent for the disbursements made by him with twenty per cent interest thereon, as provided by Bal. Code, § 814.

It is further ordered that, if prior to the commencement of this action the full amount then due had been tendered by the appellants, they recover their costs in the superior court; that otherwise the respondent recover said costs. It is further ordered that, in estimating the amount due, the appellants, if a full tender was made by them prior to the commencement of this action, shall be charged twenty per cent interest on the respondent's disbursements to the date of said tender only, and that no further interest be allowed; otherwise that interest be allowed at said rate until the date of payment. The appellants will recover costs in this court.

Mount, C. J., Root, Dunbar, Rudkin, and Hadley, JJ., concur.